UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAUL BULLOCK,

        Plaintiff,

vs.
                                        Case No. 07-CV-13949
                                        HON. GEORGE CARAM STEEH

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

_____/

## ORDER MODIFYING IN PART REPORT AND RECOMMENDATION (# 24) DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (# 22), DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (#18), AND REMANDING TO THE ALJ

      This matter is before the court on the parties' cross-motions for summary judgment as to plaintiff Paul Bullock's claim for judicial review of defendant Commissioner of Social Security's denial of his application for disability insurance benefits premised on alleged severe impairments arising from Hepatitis C, post-traumatic stress disorder, and lower back pain. The matter was referred to Magistrate Judge Charles Binder, who issued a fourteen-page Report and Recommendation on August 21, 2008, recommending that defendant Commissioner's motion for summary judgment be granted, that Bullock's motion be denied, and that Bullock's claim be dismissed on concluding there is substantial evidence in the record to support the Administrative Law Judge's ("ALJ") decision at Step Two[1] that Bullock

---

[1] At the first step, the claimant must demonstrate the he is not gainfully employed at the time of application. The second step requires the claimant to show that he suffers from a severe impairment. The third step requires the claimant to show that his severe

did not suffer from a severe impairment on or before September 30, 1995.  The Magistrate Judge also denied Bullock's request to remand to the ALJ based on new material evidence not available to the ALJ or Appeals Council.  Consistent with a court authorized extension, Bullock filed timely objections to the Report and Recommendation on September 25, 2008.

"A judge of the court shall make a de novo determination of those portions of a report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).  "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate."  Id.

A district court may affirm, modify, or reverse the Commissioner's decision, with or without remand.  See 42 U.S.C. § 405(g).  Findings of fact by the Commissioner are conclusive if supported by substantial evidence.  Id.  The court must affirm the decision if it is "based on [an appropriate] legal standard and is supported by substantial evidence in the record as a whole."  Studaway v. Secretary of Health and Human Servs., 815 F.2d 1074, 1076 (6th Cir. 1987).  A district court may remand to the Commissioner for consideration of new and material evidence that for good cause shown was not previously presented to the Commissioner.  Faucher v. Sec. Health and Human Servs., 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g); Sizemore v. Sec. of Health and Human Servs., 865 F.2d 709, 711, 711 n.1 (6th Cir. 1988).  For new evidence to constitute material

---

impairment meets or equals an impairment as listed in Appendix 1, Subpart P, Regulations No. 4 of the Social Security Act.  See 20 C.F.R. § 404.1520(f).  The fourth step entails the Commissioner's review of the claimant's residual functional capacity and relevant past work to determine if the claimant can perform his past work.  If not, the analysis proceeds to the fifth step to determine whether the claimant can perform any other work available in the economy.  See Howard v. Commissioner of Social Security, 276 F.3d 235, 238 (6th Cir. 2002).

2

evidence, the plaintiff must demonstrate there is a reasonable probability that the Commissioner would have reached a different disposition of the claim if presented with the new evidence. Sizemore, 865 F.2d at 711.

Bullock's claim for disability benefits is limited to a time period on or before September 30, 1995, the date on which he was last insured. Following an October 6, 2005 hearing, the ALJ issued a December 2, 2005 decision denying Bullock's claim for disability benefits.

> The claimant has testified that he worked, performing substantial gainful activity until he was imprisoned in 1990. The date last insured for disability is September 30, 1995. Therefore, <u>the undersigned must determine if the claimant became disabled on or before September 30, 1995</u>.
>
> The May 20, 1999 Florida Department of Health states that a blood test was positive for hepatitis "C". This is the first report of the claimant's diagnosis of this impairment (Exhibit 1F). Later, clinical notes indicate that while the medical evidence establishes the diagnosis of hepatitis "C", he is not and has not been symptomatic. <u>Since the first medical evidence of hepatitis "C" is the May 20, 1999 report, the undersigned finds that the impairment is not medically established prior to September 30, 1995, the date last insured</u>.
>
> The reports of Mr. Dobson beginning July 13, 1999 demonstrate that there was discussion and counseling for anger and mistrust of government and there was discussion about the claimant's Vietnam related military service (Exhibit 2F). Later reports of Mr. Dobson and most specifically the note of September 6, 2001 first announces the diagnosis of post-traumatic stress disorder (Exhibit 2F). Dr. Chirumamilla (Psychiatrist associated with the Veteran's Administration) reported on October 10, 2002 that claimant's symptoms did not meet the diagnostic criteria for post-traumatic stress disorder (Exhibit 4F). Dr. Tripi, who is a psychologist licensed by the State of Michigan (6301008382), provided quite a different opinion than Dr. Chirumamilla. Dr. Tripi has opined that the claimant has had post-traumatic stress disorder since he left the military service. She further opined, in her September 26, 2005 report that the symptoms of his post-traumatic stress disorder became disabling in 1990 (Exhibit 8F). The undersigned must note that Dr. Tripi is not a treating source and her opinion is not entitled to controlling weight. It must be added, however, that <u>Dr. Tripi said in her report that her review of medical records and reports did not include any information prior to May 16, 2000</u>. Additionally, as has been pointed out above, Dr. Tripi

3

appears to have relied solely on the claimant's representation of facts that are not accurate. Additionally, it must be noted that <u>the record does not reveal evidence of the diagnosis of post-traumatic stress disorder until after the claimant had been incarcerated in prison for a decade</u>. While there no longer seems to be doubt that the claimant currently suffers from post-traumatic stress disorder, <u>there is a lack of medical evidence that he experienced symptoms of the impairment until a decade into his imprisonment and well after the date last insured (September 30, 1995)</u>. Additionally, the undersigned notes that the Department of Veterans Affairs did not find the claimant disabled until 2002, seven year's after the claimant's date last insured. The undersigned finds that <u>the medical evidence does not establish that the impairment of post-traumatic stress disorder was present prior to September 30, 1995</u>, the date last insured.

Dr. Chirumamilla provided the diagnosis of adjustment disorder and antisocial personality disorder in October 2002 (Exhibit 4F). There is <u>no medical evidence of the existence of these impairments on or before September 30, 1995</u>, the date last insured.

* * *

The claimant has reported that he has experienced back pain since he was in the military. However, the first medical report of the claimant's back pain was contained in the October 2002 report of Dr. Chirumamilla, who noted that the claimant reported back pain (Exhibit 4F). Dr. Kanneganti also noted the claimant's complaint of back pain in May 2003 (Exhibit 3F). June 10, 2003 magnetic resonance imaging studies demonstrated evidence of degenerative disc disease of the lumbar spine. However, there is <u>a complete absence of medical documentation of the claimant's back prior to 2002. The undersigned finds that an impairment of the lumbar spine has not been established prior to September 30, 1995</u>, the date last insured.

<u>Since there is no medical evidence establishing a severe impairment on or before September 30, 1995, the date last insured, the undersigned must find that the claimant was not disabled on or before the date last insured</u>. The claimant is, therefore, <u>not disabled at Step Two</u> of the five-step sequential evaluation.

December 2, 2005 SSA Decision R, at 32-33 (emphasis added).

The Sixth Circuit construes the Step-Two "severe impairment" requirement as "a <u>de minimis</u> hurdle in the disability determination process." <u>Higgs v. Bowen</u>, 880 F.2d 860, 862 (6th Cir. 1988). "Under the prevailing <u>de minimis</u> view, an impairment can be considered

not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." Id. ". . . Congress has approved the threshold dismissal of claims obviously lacking medical merit, because in such cases the medical evidence demonstrates no reason to consider age, education, and experience." Id. at 862-63.

Reviewing the record de novo, it is clear that the ALJ denied Bullock's claim at Step-Two due to a lack of *any* medical evidence from 1990 through September 30, 1995, making it "obvious" to the ALJ that Bullock was not severely impaired by Hepatitis C, post-traumatic stress disorder, or lower lumbar spine pain before November 1, 1995. As the Magistrate Judge correctly notes, Bullock has the burden of proving that he was "disabled" on or before September 30, 1995. See Moon v. Sullivan, 923 F.2d 1175, 1182 (6th Cir. 1990). The ALJ could properly conclude that the Florida Department of Heath Report first diagnosing Bullock with Hepatitis C in 1999, Dobson's 1999 and 2001 notes regarding post-traumatic stress disorder, Dr. Tripi's 2005 opinion based on year-2000 medical reports that Bullock suffered from post-traumatic stress disorder since his 1970 military service in Vietnam, the Department of Veterans' Affairs' 2002 finding that Bullock was unemployable due to post-traumatic stress syndrome, Dr. Chirumamilla 2002 diagnosis of adjustment disorder and antisocial personality disorder, and prison medical reports noting that Bullock complained of back pain in 2002 and 2003, do not constitute substantial evidence that that Bullock suffered more than "slight abnormalities" from Hepatitis C, post-traumatic stress disorder, or lower back pain while incarcerated from 1990 through September 30, 1995. Higgs, 880 F.2d at 862. Likewise, the proffered September 26, 2005 assessment by Ronald Hamden of the Department of Veteran Affairs – that Bullock's "symptoms of Post Traumatic Stress Disorder have been in existence since his return from Vietnam" – also

candidly admits that Hamden "cannot give an accurate assessment dating prior to 1995 [because] [m]y work with Mr. Bullock started in December 2003 and ended in January 2005." The record before the ALJ supports the ALJ's decision December 2, 2005 decision disqualifying Bullock at Step-Two of the decision process.

In denying Bullock's request for remand to consider Bullock's newly disclosed 1990 through 1996 medical records, the Magistrate Judge finds that Bullock and his Counsel demonstrated "good cause" for not presenting these materials to the Commissioner in that the medical records were not provided to Bullock before the Appeals Council denied review on May 18, 2007, notwithstanding Counsel's exercise of due diligence. Faucher, 17 F.3d at 174; Sizemore, 865 F.2d at 711, 711 n.1. The Commissioner has not objected to this finding, a finding which is supported by the record.

The Magistrate Judge found that the newly disclosed 1990 through 1996 medical records are not "material" for purposes of remand. The court disagrees. The ALJ's finding at Step-Two represents a determination that, under a "de minimis view," "the medical evidence demonstrates no reason to consider age, education, and experience" in determining whether Bullock is "disabled." Higgs, 880 F.2d at 862-863. The 191 pages of 1990 through 1996 prison medical records raise a reasonable probability that the Commissioner may reach a different disposition of Bullock's claim, and at minimum, require the ALJ to proceed through the "de minimis hurdle" of Step Two through the entire Five-Step process. Sizemore, 865 F.2d at 711. The ALJ's decision at Step-Two became "obvious" because there was "no medical evidence establishing a severe impairment on or before September 30, 1995." Bullock's 1990 through 1996 medical records are now available for review. Whether Bullock's claim should proceed beyond Step-Two in light of

the newly disclosed medical records is an issue for the ALJ to decide on remand. This court may not try the case de novo, nor resolve conflicts in the record evidence. Walters v. Commissioner of Social Security, 127 F.3d 525, 528 (6th Cir. 1997) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)). Given the basis for the ALJ's decision, the court finds that the newly disclosed medical records are material. Bullock's objection to the denial of her request for remand is sustained. Accordingly,

The court hereby MODIFIES IN PART the August 21, 2008 Report and Recommendation to the extent Bullock's request for remand will be granted. Plaintiff Bullock's motion for summary judgment is hereby DENIED. Defendant Commissioner of Social Security's motion for summary judgment is hereby DENIED. This matter is hereby REMANDED to the ALJ for further proceedings consistent with the analysis herein.

SO ORDERED.

Dated: December 12, 2008

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on December 12, 2008, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk

---